RCH:RWN
F. #2024R00053

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

PIERRE HUNT,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 24-CR-142 (OEM)

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Russell Noble
Assistant U.S. Attorney
   (Of Counsel)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 1

I.   THE CELL SITE WARRANT WAS SUPPORTED BY PROBABLE CAUSE................... 14

     A.  Applicable Law....................................................................................... 14

         1.  Probable Cause.............................................................................. 14

         2.  Good Faith Exception ................................................................... 16

     B.  The Cell Site Warrant Established Probable Cause........................................... 18

     C.  The Premises and Vehicle Warrants Were Based Upon Probable Cause Irrespective of the
         Cell Site Warrant.................................................................................... 26

     D.  Even if the Defendant's Fourth Amendment Rights Were Infringed,  Suppression Would
         Not be Warranted.................................................................................... 27

II.  THERE IS NO MATERIAL DISPUTE OF FACT, SO THE DEFENDANT'S MOTION
     SHOULD BE DENIED WITHOUT AN EVIDENTIARY HEARING................................ 29

CONCLUSION........................................................................................................ 30

TABLE OF AUTHORITIES

Carpenter v. United States, 585 U.S. 296 (2018).................................................................... 19, 27

Davis v. United States, 564 U.S. 229 (2011) ...................................................................... 17

Florida v. Harris, 568 U.S. 237 (2013) .............................................................................. 27

Herring v. United States, 555 U.S. 135 (2009) ............................................................... 17, 18

Illinois v. Gates, 462 U.S. 213 (1983). ......................................................... 15, 16, 20, 28

Massachusetts v. Upton, 466 U.S. 727 (1984)..................................................................... 16

Michigan v. Hudson, 547 U.S. 586 (2006) ......................................................................... 17

Rivera v. United States, 928 F.2d 592 (2d Cir. 1991) ........................................................ 17

Texas v. Brown, 460 U.S. 730 (1983) ................................................................................ 15

United States v. Ashburn, 76 F. Supp. 3d 401 (E.D.N.Y. 2014) ...................................... 32

United States v. Bertini, No. 23-CR-61 (PGG), 2023 WL 8258334 (S.D.N.Y. Nov. 29,
     2023) ............................................................................................................................ 21, 24

United States v. Clark, 638 F.3d 89 (2d Cir. 2011) ........................................... 19, 29, 30

United States v. Falcon, No. 21-CR-0577 (PKC), 2025 WL 51132 (E.D.N.Y. Jan. 8, 2025)...... 25

United States v. Falso, 544 F.3d 110 (2d Cir. 2008) ..................................................... 19

United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004)...................................................... 15

United States v. Getto, 729 F.3d 221 (2d Cir. 2013) ....................................................... 31

United States v. Gillette, 383 F.2d 843 (2d Cir. 1967) .................................................... 31

United States v. Hassan, No. 18-CR-603 (ARR), 2019 WL 5684367 (E.D.N.Y. 2019)............. 31

United States v. Hewitt, No. 22-1387, 2023 WL 6324380 (2d Cir. Sept. 29, 2023)................... 27

United States v. Jakobetz, 955 F.2d 786 (2d Cir. 1992) .................................................. 16

United States v. Javon Samuels, No. 24-CR-305 (ALC), 2025 WL 723209 (S.D.N.Y. Mar. 6,
     2025) ................................................................................................................................ 23

United States v. Lauria, 70 F.4th 106 (2d Cir. 2023)........................................................ 19, 24

United States v. Leon, 468 U.S. 897 (1984)..................................................................... 17, 18

United States v. Matias, 836 F.2d 744 (2d Cir. 1988) ................................................................ 30

United States v. Messalas, No. 17-CR-339 (RRM), 2020 WL 4003604 (E.D.N.Y. 2020) .......... 30

United States v. Ortega, No. 22-CR-91 (RA)-1, 2022 WL 16647779 (S.D.N.Y. Nov. 2, 2022) . 26

United States v. Peeples, 962 F.3d 677 (2d Cir. 2020) ................................................................ 28

United States v. Pena, 961 F.2d 333 (2d Cir. 1992) .................................................................... 31

United States v. Raymonda, 780 F.3d 105 (2d Cir. 2015) ........................................................... 17

United States v. Rosa, 626 F.3d 56 (2d Cir. 2010) ..................................................................... 18

United States v. Salameh, 152 F.3d 88 (2d Cir. 1998) ........................................................... 16, 29

United States v. Santos, No. 23-CR-436 (OEM), 2024 WL 3566983 (E.D.N.Y. July 29, 2024) 26

United States v. Santos, No. 24-2301, 2025 WL 2461770 (2d Cir. Aug. 27, 2025) .................... 19

United States v. Silva, 146 F.4th 183 (2d Cir. July 24, 2025) ................................................. 15, 21

United States v. Singh, 390 F.3d 168 (2d Cir. 2004 .................................................................... 15

United States v. Wagner, 989 F.2d 69 (2d Cir. 1993) ................................................................. 14

United States v. Watson, 404 F.3d 163 (2d Cir. 2005) ................................................................ 31

Walcyzak v. Rio, 496 F.3d 139 (2d Cir. 2007) ....................................................................... 16, 29

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to the motion to suppress evidence filed by the defendant, Pierre Hunt.  <u>See</u> Def. Mot. to Suppress ("Def. Mot."), ECF No. 38.  The defendant is charged with Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a), and possessing, brandishing and discharging a firearm during a crime of violence, in violation of Title 18, United States Code, Section 924(c).  <u>See</u> Indictment, ECF No. 11.

The defendant moves to suppress evidence obtained pursuant to a search warrant for historical cell site location information (the "Cell Site Warrant") and subsequent search warrants for the defendant's home, a silver 2017 Nissan Rogue, and any electronic devices found therein (collectively, the "Premises and Vehicle Warrants").  The defendant's principal argument for suppression is that there was insufficient probable cause to believe that historical cell site data for the defendant's cell phone would constitute evidence of the robbery.  For the reasons that follow, the defendant's arguments should be rejected, and the Court should deny the defendant's motion in its entirety.

<u>STATEMENT OF FACTS</u>

I.      <u>The Robbery</u>

On January 8, 2024, the defendant robbed a dry cleaner (the "Store") on Lewis Avenue in Brooklyn, New York, at gunpoint.[1]  At approximately 2:15 p.m. that day, video

---

[1]      These facts are drawn from the Complaint in this case (ECF No. 1); the Cell Site Warrant and supporting affidavit, attached to defense counsel's declaration in support of his motion to suppress as Exhibit A ("DX A"), and previously provided to the Court; a search warrant for the defendant's home, the silver Nissan Rogue, and prospective cell site location information, issued on March 4, 2024, and supporting affidavit, attached to defense counsel's declaration as Exhibit B ("DX B"), and previously provided to the Court; an additional search warrant for the defendant's home and the silver Nissan Rogue, issued on March 18, 2024, and supporting affidavit, attached hereto as Exhibit 1 ("GX 1"); materials produced to the defendant

1

surveillance cameras at the Store captured a black male wearing dark-colored sunglasses, what appear to be large diamond earrings, a grey and black knit hat, a dark-colored jacket with yellow decals on the right sleeve and hood, red and black gloves, green pants, and brown boots—later identified as the defendant—approaching the Store from the north on Lewis Avenue and entering the Store. Upon entering, the defendant pointed a firearm at each of the two employees who were present and demanded money. The employee at the cashier's counter ("Victim-1") provided the defendant with approximately $200 in United States currency from the cash register. The defendant asked if Victim-1 had anything else, and she responded that she did not. Pointing his gun to the side, the defendant then fired one bullet, which ricocheted off the counter in front of Victim-1 and struck the wall. The defendant then exited the Store and walked northbound on Lewis Avenue toward Putnam Avenue.

II.    The Identification of the Defendant

Shortly before the robbery, video surveillance from a nearby surveillance camera captured a silver Nissan Rogue (the "Nissan Rogue") with a black driver's side mirror and a silver passenger's side mirror park at the intersection of Lewis Avenue and Putnam Avenue, one block north of the Store. An individual wearing dark clothing consistent with the clothing worn by the perpetrator of the robbery exited from the driver's seat and walked southbound toward the Store. Shortly after the Robbery, video surveillance from the same surveillance camera captured an individual wearing dark clothing consistent with the clothing worn by the perpetrator walk northbound from the direction of the Store, enter the driver's seat of the Nissan Rogue, and drive westbound on Putnam Avenue.

---

as discovery in this case; and facts that the government proffers in connection with the instant motion and would establish at an evidentiary hearing, although the government respectfully submits that no such evidentiary hearing is necessary for the reasons stated herein.

2

Video surveillance from a New York State Department of Transportation camera then captured the Nissan Rogue traveling westbound on Putnam Avenue, approximately three blocks west of Lewis Avenue and Putnam Avenue.  This camera captured the license plate of the Nissan Rogue.[2]

Law enforcement agents also reviewed body worn camera footage from an NYPD traffic stop of the defendant on January 15, 2024, one week after the robbery.  As captured on this body worn camera footage, the defendant received a traffic summons while seated in the driver's seat of the same silver Nissan Rogue with a black driver's side mirror and silver passenger side mirror.  The Nissan Rogue was parked at the intersection of Fulton Street and Albany Avenue, Brooklyn, New York, which is approximately six blocks south and one block east of the Store.  During the traffic stop, the Nissan Rogue bore a New York license plate number that appears consistent with the license plate depicted on the New York State Department of Transportation video described above.

As depicted in the body worn camera footage from this traffic stop, the defendant was wearing what appear to be large diamond earrings consistent with those worn by the perpetrator of the robbery, and the defendant's size, build, and skin tone as shown on the video were consistent with the perpetrator's.  The defendant was issued a summons for consuming cannabis in a motor vehicle on a public highway.  The defendant provided a driver's license listing a home address at a second-floor apartment on Gary Court, Staten Island, New York (the "Hunt Residence").

---

[2]     The quality of this video is not necessarily clear enough to make out every digit. A still image from this video, depicting the license plate of the Nissan Rogue, was included in the Cell Site Warrant.  See DX A ¶ 15.

A search of a law enforcement database showed that the Nissan Rogue was registered to a woman with a home address on the second floor of the same building that houses the Hunt Residence.

License plate reader ("LPR") data revealed that, on the date of the robbery, the Nissan Rogue travelled between Staten Island and Brooklyn in a manner consistent with travelling from the Hunt Residence to the Store and back. On January 8, 2024, at approximately 12:54 p.m. (approximately one hour and 20 minutes before the robbery), an LPR camera captured the Nissan Rogue on the Verrazano Bridge (which connects Staten Island and Brooklyn) travelling towards Brooklyn. At approximately 3:13 p.m. (approximately one hour after the robbery), an LPR camera captured the Nissan Rogue returning from Brooklyn to Staten Island via the Verrazano Bridge.

III.    The Defendant's Phone Number

To determine the defendant's telephone number, law enforcement agents reviewed a record of a transaction involving the defendant at a pawn shop in October 2023. During this transaction, the defendant provided a phone number ending in -4073 (the "Hunt Phone") as his telephone number. The defendant also provided the same driver's license that he provided to the police during his traffic stop on January 15, 2024.

Law enforcement agents reviewed records provided by AT&T for the Hunt Phone. These records reflected that the Hunt Phone was active throughout January 2024 and sent and received numerous communications on and around the date of the robbery.

4

IV.     The Search Warrants

    A.     The Cell Site Warrant

Based on the facts set forth above, on February 2, 2024, the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, issued a search warrant for historical cell site location information ("CSLI") for the Hunt Phone under Magistrate Docket No. 24-449 (the "Cell Site Warrant"). See DX A. The Cell Site Warrant required AT&T to produce, among other records, "information regarding the cell tower and antenna face (also known as 'sectors') through which [any] communications were sent and received for both call detail records and any data sessions, as well as per-call measurement data" for the period from January 1, 2024 to January 20, 2024. Id., Attach. B at 2. This date range covered the period from one week before the robbery to five days after the traffic stop that helped identify the defendant.

The Cell Site Warrant authorized the government to seize "[a]ll information [provided by AT&T] constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. §§ 1951 (Hobbs Act Robbery), 924(c) (Unlawful Use of a Firearm During a Crime of Violence), and 922(g) (Possession of a Firearm by a Convicted Felon) involving PIERRE HUNT, the user of the Subject Phone" Id., Attach. B. at 3.

The affidavit in support of the Cell Site Warrant detailed the criminal offenses under investigation and the probable cause supporting issuance of the warrant. See DX A at 1-11. The application described why the defendant was suspected to have been the robber: (1) the similarities between the physical appearance and earrings of the perpetrator, as captured on the Store's surveillance cameras, and the defendant, as depicted on body worn camera footage one week later (id. at 3-6, ¶¶ 7-8, 11); (2) the distinctive silver Nissan Rogue with mismatched mirrors

5

that was captured on surveillance video at the scene of the robbery, in which the defendant was seated one week later in the same neighborhood (id. at 4-6, ¶¶ 9-12); and (3) license plate readers which captured the Nissan Rogue travelling from Staten Island, where the defendant resides, to Brooklyn before the robbery and returning to Staten Island afterward (id. at 6, ¶ 13).

The warrant application also explained why the cell phone for which the CSLI was sought was attributed to the defendant. Specifically, in October 2023, the defendant provided the Hunt Phone number as his telephone number during a transaction at a pawn shop. Id. at 7, ¶ 17. [3]

In support of the government's application for the CSLI of the Hunt Phone, the affidavit explained that AT&T records showed that the Hune Phone was active throughout January 2024. Id. ¶ 16. The affidavit also explained that the Hunt Phone sent and received numerous communications both on and around the date of the robbery, reflecting the defendant's possession and usage of the Hunt Phone on the day of the robbery and in the days immediately surrounding the robbery. Id. Therefore, the CSLI requested in the warrant was expected to show "the locations of the suspect in this investigation, PIERRE HUNT, leading up to, during, and in the aftermath of the Robbery." (Id. at 7, ¶ 17). The affidavit went on to explain that, besides showing the location of the Hunt Phone during the robbery, the requested CSLI would tend to identify the person who used the Hunt Phone at the times relevant to the robbery, by showing its presence at locations known to be associated with a suspect. Id. Based on these representations in the affidavit, Judge Levy authorized the warrant.

---

[3]     The defendant does not contest that the Hunt Phone number was, in fact, his phone number. See ECF No. 40, Affidavit of Defendant.

6

B. <u>Returns from the Cell Site Warrant</u>

Consistent with the government's theory that the defendant was the perpetrator of the robbery, the returns from the Cell Site Warrant showed that the Hunt Phone was located in the vicinity of the Store during the robbery and further corroborated the other evidence linking the defendant to the robbery. The returns showed that on January 8, 2024, at approximately 12:20 p.m., the Hunt Phone was located in the vicinity of the Hunt Residence. The Hunt Phone crossed the Verrazzano Bridge into Brooklyn at approximately 12:54 p.m., the same time that the Nissan Rogue was captured on an LPR camera crossing the Verrazzano Bridge into Brooklyn. The Hunt Phone then traveled to the vicinity of the Store, where it was located when the robbery occurred at approximately 2:17 p.m. In the map reproduced below, a series of purple dots reflects the cell towers that the Hunt Phone connected to between approximately 12:20 p.m. and 2:17 p.m. The Hunt Residence is marked in green, and the Store is marked in red.



After the robbery, the Hunt Phone travelled back to Staten Island, crossing back over the

Verrazzano Bridge at approximately 3:14 p.m., nearly the same time that the Nissan Rogue was

captured on an LPR.

Also consistent with the government's evidence linking the defendant to the

robbery, the returns from the Cell Site Warrant showed that on January 15, 2024, at the time when

the defendant was issued a summons at the intersection of Fulton Street and Albany Avenue, the

Hunt Phone was located in the vicinity of that intersection.

C.      The First Premises and Vehicle Warrant

On March 4, 2024, the Honorable Cheryl L. Pollak, United States Magistrate Judge

for the Eastern District of New York, issued a search warrant authorizing searches of the Hunt

Residence, the Nissan Rogue, and any electronic devices found in either place under magistrate

docket number 24-MJ-198 ("Premises and Vehicle Warrant-1").  See DX B.  Premises and Vehicle

Warrant-1 authorized the seizure of clothing worn by the perpetrator of the robbery, firearms and

related records, evidence of the identity of the residents of the Hunt Residence and owner of the

Nissan Rogue, and electronic devices belonging to the defendant.  Id., Attach. B-1 and B-2, ¶ 1.

Premises and Vehicle Warrant-1 further authorized the search of such electronic devices for

evidence related to the preparation and commission of the robbery, evidence of the robber's state

of mind, the location of the devices during the period from January 1, 2024 to January 20, 2024

and evidence of user attribution showing who used or owned the devices at relevant times.  Id.,

Attach. B-1 and B-2, ¶ 2.

The affidavit in support of Premises and Vehicle Warrant-1 extensively detailed the

criminal offenses under investigation and the probable cause supporting issuance of the warrant.

See DX B at 1-25.  The affidavit restated the same facts that had established probable cause to

8

believe the defendant was the perpetrator of the robbery set forth in the Cell Site Warrant: the video surveillance from the Store and the traffic stop of Pierre Hunt, the distinctive mismatched mirrors of the Nissan Rogue, and the license plate reader data showing the Nissan Rogue traveling from Staten Island to Brooklyn before the robbery and returning afterwards. Id. at 5-9, ¶¶ 12-19. The affidavit also included an additional screenshot from a second camera at the Store, more fully depicting the clothing the defendant was wearing during the robbery. Id. at 6, ¶ 13. The affidavit also described the records obtained from the Cell Site Warrant, providing further evidence of the defendant's identity as the perpetrator. Id. at 10, ¶¶ 24-25. It explained that the Hunt Phone was located in the vicinity of the Hunt Residence before the robbery; traveled across the Verrazano Bridge into Brooklyn at the same time as the Nissan Rogue; traveled to the vicinity of the Store, where it was located during the robbery; crossed back over the Verrazzano Bridge after the robbery at nearly the same time as the Nissan Rogue; and then returned to the Hunt Residence. Id. ¶ 24. It also noted that, one week later, the same Hunt Phone was located in the vicinity of the intersection where the defendant received a traffic summons at the time he received it. Id. ¶ 25.

After setting forth the probable cause that the defendant was the perpetrator, the affidavit then explained why evidence was likely to be found at the Hunt Residence and in the Nissan Rogue. Id. at 10-12, ¶¶ 26-28. The affiant explained that, "[b]ased on [his] training and experience, and [his] participation in this investigation," he was aware that "[p]eople who commit shootings, gunpoint robberies, and other acts of gun violence commonly keep firearms, ammunition, [and related items] in their homes and commonly transport firearms and ammunition in their vehicles," and that people "principally maintain their clothing, footwear, headgear, eyewear, jewelry, packs, bags and other accessories at their residences and commonly transport such items in their vehicles . . . ." Id. at 10-11, ¶ 26(a)-(b). Because the defendant travelled in the

9

Nissan Rogue to and from the scene of the robbery and returned to the vicinity of the Hunt Residence after the robbery, there was particular reason to believe that clothing and jewelry worn by the defendant and other evidence of the robbery would be found at the Hunt Residence and/or in the Nissan Rogue. Id. at 11, ¶ 27.

The affidavit in support of Premises and Vehicle Warrant-1 also detailed probable cause to seize and search any electronic devices found in the Hunt Residence or the Nissan Rogue that belonged to the defendant. Id. at 11-12, ¶ 28. The affidavit explained that the returns from the Cell Site Warrant showed "that the [Hunt Phone] was located in the vicinity of [the Store] during the Robbery; that the [Hunt Phone] travelled with the [Nissan Rogue] to and from the scene of the Robbery; that the [Hunt Phone] was located in the vicinity of the [Hunt Residence] before and after the Robbery; and that the [Hunt Phone] was located in the same vicinity as PIERRE HUNT when he was issued a summons on January 15, 2024." Id. Probable cause therefore existed to believe that electronic devices used by the defendant would contain location information and evidence of the defendant's use of such devices at and around the time of the robbery, which would be probative evidence of the defendant's identity as the robber. Id.

Lastly, the affidavit in support of Premises and Vehicle Warrant-1 sought prospective cell site location data for the Hunt Phone. Id. at 12-14, ¶¶ 30-34. As described in the affidavit, "determining the location of the [Hunt Phone] will assist law enforcement in locating and identifying the [Hunt Phone], the user of the [Hunt Phone], and the evidence of the SUBJECT OFFENSES described in Attachments B-1 and B-2." Id. at 12, ¶ 30.

Judge Pollak agreed that there was probable cause to search the Hunt Residence, the Nissan Rogue, the defendant's electronic devices found therein, and prospective location information for the Hunt Phone, and authorized the warrants.

10

D.      The Second Premises and Vehicle Warrant

Premises and Vehicle Warrant-1 authorized the execution of searches of the Hunt Residence and the Nissan Rogue on or before March 18, 2024, within fourteen days after it was issued.  Due to logistical constraints, law enforcement agents were not able to execute the portions of Premises and Vehicle Warrant-1 that authorized the search of the Hunt Residence and the Nissan Rogue within that time period.  Therefore, on March 18, 2024, the government submitted an additional application to the Honorable Peggy Kuo to authorize new warrants to search the Hunt Residence and Nissan Rogue that were substantively identical to the corresponding warrants in Premises and Vehicle Warrant-1, with the exception that they could be executed between March 18, 2024 and April 1, 2024 ("Premises and Vehicle Warrant-2").  This application and the accompanying warrants are attached hereto as Government Exhibit 1 ("GX 1").

Premises and Vehicle Warrant-2 attached and incorporated by reference the entirety of Premises and Vehicle Warrant-1, including the signed search warrants and supporting affidavit. See GX 1 at 3, ¶ 6.  It therefore contained all of the same facts set forth in Premises and Vehicle Warrant-1 and likewise established probable cause to search the Hunt Residence, the Nissan Rogue, and electronic devices found therein.

Besides the facts set forth in Premises and Vehicle Warrant-1, Premises and Vehicle Warrant-2 also included information obtained pursuant to the warrant for prospective cell site location information that had been issued as part of Premises and Vehicle Warrant-1.  This location information confirmed that, since at least March 8, 2024, the Hunt Phone had been regularly located in the vicinity of the Hunt Residence. Id. at 5, ¶ 11.  The affidavit further stated that the location information since March 8, 2024, had been compared with data from license plate readers, which showed that there were multiple occasions since March 8, 2024, in which the Hunt

11

Phone had been located in the vicinity of the Hunt Residence at the same time that the Nissan Rogue was captured on license plate readers at other locations.  Id. ¶ 12.  This suggested that, during this period, there were instances when another person besides the user of the Hunt Phone was driving the Nissan Rogue.

Based on the representations set forth in Premises and Vehicle Warrant-2, Judge Kuo, like Judge Pollack, agreed that probable cause existed to search the Hunt Residence and the Nissan Rogue and authorized warrants to search both.

On the same day that Premises and Vehicle Warrant-2 was issued, the Honorable Peggy Kuo also authorized a complaint charging the defendant with one count of Hobbs Act robbery and one count of brandishing and discharging a firearm, and an accompanying arrest warrant.  See ECF No. 1.

E.      Returns from the Second Premises and Vehicle Warrant

Law enforcement executed Premises and Vehicle Warrant-2 the day after it was issued (and fifteen days after Premises and Vehicle Warrant-1 had been issued).  Consistent with what the applications for the Premises and Vehicles Warrants sought to find, the agents who executed the warrants found several items of clothing that matched the clothes the defendant wore during the robbery, including a hat, scarf, pants, and shoes.  The defendant himself was also present at the Hunt Residence, and he was wearing what appear to be large diamond earrings consistent with the earrings he wore during the robbery.  The defendant was arrested and the earrings seized pursuant to Premises and Vehicle Warrant-2.

The items found at the Hunt Residence are shown below (right), alongside still images depicting the defendant during the robbery (left):



The agents who executed Premises and Vehicle Warrant-2 also seized two cell phones from the Hunt Residence.  One of these cell phones was found to contain a SIM card with the same Hunt Phone telephone number that was the subject of the Cell Site Warrant.  The contents of this cell phone included images depicting the defendant, an image depicting the Nissan Rogue, and images depicting firearms, including a revolver that appears to be consistent with the revolver used in the robbery.

ARGUMENT

The defendant now moves to suppress the returns from the Cell Site Warrant and the Premises and Vehicle Warrants described above.  He argues that the Cell Site Warrant was not supported by probable cause to believe the defendant's CSLI would contain evidence of the robbery, and that the Premises and Vehicle Warrants relied on the tainted fruits of the Cell Site Warrant.  For the reasons set forth below, the defendant's motion should be denied in its entirety because each warrant was supported by ample probable cause and comported with the Fourth Amendment.

## I.    THE CELL SITE WARRANT WAS SUPPORTED BY PROBABLE CAUSE

### A.    Applicable Law

#### 1.    Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Whether the "probable cause" clause of the Fourth Amendment is satisfied depends on the "totality-of-the-circumstances." United States v. Wagner, 989 F.2d 69, 71-72 (2d Cir. 1993).  In considering a request for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair

14

probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause is a flexible, common-sense standard," Texas v. Brown, 460 U.S. 730, 742 (1983), and the Fourth Amendment requires "[o]nly the probability, and not a prima facie showing, of criminal activity" to meet it, Gates, 462 U.S. at 235 (internal quotation marks omitted). In assessing the sufficiency of a warrant application, the training and experience of law enforcement agents bear significantly on the probable cause determination. Id. at 232; see also United States v. Silva, 146 F.4th 183, 190-93 (2d Cir. July 24, 2025) (reversing suppression where district court failed to properly consider law-enforcement affiant's expertise). Inferences drawn by law enforcement agents based on facts known to them, the totality of the circumstances and their training and experience may all support a probable cause finding. Gates, 462 U.S. at 231-32; see also United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004) ("[C]ourts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not."). Moreover, a showing of nexus between the alleged criminal activities and the place to be searched "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted).

When evaluating a search warrant issued by a magistrate judge, the district court's evaluation "should not take the form of de novo review." Gates, 462 U.S. at 236. As the Supreme Court has held, courts reviewing a magistrate judge's decision to issue a specific warrant should apply a "deferential standard of review," which "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Massachusetts v. Upton, 466 U.S. 727, 733 (1984) (per curiam); see also United States v. Jakobetz, 955 F.2d 786,

803 (2d Cir. 1992) ("Determinations by magistrates and judges who issue warrants are accorded great deference and any doubts should be resolved in favor of upholding the warrants." (internal quotation marks and citations omitted)).  Resolving doubts in favor of the warrant encourages the use of the warrants and also recognizes that "once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." Gates, 462 U.S. at 237 n.10.  Thus, a court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant," United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998), and must accord "considerable deference to the probable cause determination of the issuing magistrate," Walcyzak v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).  Under this deferential standard, an individual "who argues that a warrant was issued on less than probable cause faces a heavy burden."  Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991).

2.    Good Faith Exception

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation" of its terms.  United States v. Leon, 468 U.S. 897, 906 (1984). The exclusionary rule developed as "a 'prudential' remedy, crafted by the Supreme Court," United States v. Raymonda, 780 F.3d 105, 117 (2d Cir. 2015), and it is neither a "personal constitutional right" nor a means "to 'redress the injury' occasioned by an unconstitutional search," Davis v. United States, 564 U.S. 229, 236 (2011).  Rather, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations."  Id.  Accordingly, "the exclusionary rule is designed to deter police misconduct," not mistakes by judges and magistrates.  Leon, 468 U.S. at 916.

Thus, even where probable cause is lacking or a warrant is overbroad, suppression will rarely be the appropriate remedy.  As the Supreme Court has explained, suppression must be a court's "last resort, not [its] first impulse."  Michigan v. Hudson, 547 U.S. 586, 591 (2006).

16

Suppression is an appropriate remedy only where it deters "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009). The Supreme Court has explained that where law enforcement has obtained a warrant, suppression will be "an appropriate remedy" only where (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "the issuing magistrate wholly abandoned his judicial role," such that "no reasonably well trained officer should rely on the warrant;" (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient" that it "fail[s] to particularize the place to be searched or the things to be seized . . . [such] that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923.

As the Second Circuit has explained, "[a]pplication of the exclusionary rule depends on the 'efficacy of the rule in deterring Fourth Amendment violations in the future' as well as a determination that 'the benefits of deterrence . . . outweigh the costs.'" United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) (quoting Herring, 555 U.S. at 141). Accordingly, "'[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct.'" Id. (quoting Herring, 555 U.S. at 143). A reviewing court will therefore "look to whether 'police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" Id. (quoting Herring, 555 U.S. at 144). "'The pertinent analysis of deterrence and culpability is objective,' and '[this Court's] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer

17

would have known that the search was illegal' in light of 'all of the circumstances.'" Id. (quoting Herring, 555 U.S. at 145).

With respect to the third scenario described in Leon, the Second Circuit has held that, if "reasonable minds [could] differ" as to whether an affidavit established probable cause, "[o]nce the district court ruled on the legal sufficiency of the facts alleged in the affidavit, the officers were justified in executing the warrant." United States v. Falso, 544 F.3d 110, 128 (2d Cir. 2008). Where an affidavit "'falls somewhere in between' a case with a detailed affidavit establishing a connection between the [item to be searched] and the alleged crimes and an affidavit lacking any factual support whatsoever," the good-faith exception will apply. United States v. Santos, No. 24-2301, 2025 WL 2461770, *3 (2d Cir. Aug. 27, 2025) (quoting United States v. Clark, 638 F.3d 89, 103-04 (2d Cir. 2011).

B.       The Cell Site Warrant Established Probable Cause

The defendant argues that the Cell Site Warrant failed to establish probable cause that evidence of the crime would be found in the CSLI for the Hunt Phone, because there was no indication that anyone else was involved in the robbery or that the defendant was seen using his phone. Def. Mot. at 4-8. The defendant's arguments mischaracterize the probable cause advanced in the Cell Site Warrant's affidavit. In addition, he seeks to impose additional burdens on the government beyond what the law requires to obtain a search warrant.

The Second Circuit precedent that the defendant cites imposes no additional requirements that the government must satisfy to obtain CSLI beyond the ordinary probable cause showing that must be met to receive any search warrant. See United States v. Lauria, 70 F.4th 106, 120 (2d Cir. 2023) ("'the Government must generally obtain a warrant supported by probable cause before acquiring [CSLI] records'") (quoting Carpenter v. United States, 585 U.S. 296, 305 (2018)). As with any other warrant, "[t]he law is well established that probable cause

18

to search a location for—or, in the case of CSLI, to demand—particular items or records is demonstrated where a totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found' thereby." Id. at 128 (quoting Gates, 462 U.S. at 238)). Accordingly, the Second Circuit has instructed that "[s]earches conducted pursuant to such warrants [i.e., warrants for CSLI records] are presumptively reasonable." Id.

Based on this clear precedent, the Court must presume that the Cell Site Warrant that the defendant challenges is reasonable. And, indeed, it was. It articulated a fair probability that evidence of a crime would be found in the CSLI for the Hunt Phone, which provided sufficient probable cause to support issuance of the warrant. Specifically, the affidavit comprehensively established probable cause that the defendant was the perpetrator of the robbery, that the Hunt Phone belonged to the defendant, and that the Hunt Phone sent and received communications both on and around the date of the robbery, reflecting that the defendant had it in his possession on the day of the robbery and the days surrounding the robbery. Consequently, the CSLI connected to the Hunt Phone was likely to contain evidence of a crime by showing the defendant's location during the robbery and his movements on the day of the robbery, and in particular by comparing those movements with the other known locations of the Nissan Rogue in the hours before and after the robbery.

Contrary to the defendant's claim, the Cell Site Warrant did not rest merely on an assumption that "most people carry cell phones most of the time." Def. Mot. at 8. Instead, it demonstrated that the defendant's own cell phone number, which he provided during a pawn shop transaction, was active in January 2024 and sent and received communications both on and around the date of the robbery. Therefore, the defendant's claim that "[t]here was no indication . . . that Mr. Hunt used a phone to communicate with anyone else," Def. Mot. at 4, is incorrect.

19

The affidavit established exactly the opposite: that the Hunt Phone sent and received communications on the date of the robbery.

The defendant argues that the government was required to show that he <u>used</u> his cell phone to commit the robbery, stating that "[t]he robber is not alleged to have used his phone in connection with the incident and video surveillance does not show the alleged perpetrator using his phone." Def. Mot. at 2. But such a showing is not required under the law in the Second Circuit. As the Second Circuit explained in a recent decision reversing suppression of the contents of a cell phone, "a search warrant does not require probable cause of the <u>use</u> of the property in furtherance of criminal conduct, so long as there is probable cause that the location to be searched contains relevant evidence of the criminal conduct." <u>United States v. Silva</u>, 146 F.4th 183, 190 (2d Cir. July 24, 2025) (emphasis in original). Thus, even a warrant to search the contents of a cell phone does not require evidence that the phone was used to commit the crime, only "that a search of [the] cell phone might have with a 'fair probability' yielded evidence of [the defendant's] participation in the alleged criminal conduct." <u>Id.</u> at 193.

<u>United States v. Bertini</u>, which the defendant cites repeatedly in support of suppression (Def. Mot. at 6-8) (but which is not binding on this Court), further explains the probable cause showing the government must make to receive a warrant for CSLI. No. 23-CR-61 (PGG), 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023). There, the court explained that for issuance of a CSLI warrant:

> there must be probable cause to believe that [the defendant] (1) was carrying his cell phone at the time he committed one of the bank burglaries at issue, such that his phone's location would yield evidence of the burglaries; **or** (2) that he somehow used his cellphone at an earlier time in connection with or to facilitate the bank burglaries.

<u>Id.</u>, at *7 (emphasis added).

20

In this case, the government readily satisfied the first justification in its application for the defendant's CSLI.  The affidavit established a fair probability that the defendant was carrying his cell phone during the armed robbery and other relevant times such that his phone's location would yield evidence of that robbery.  Specifically, the affidavit explained that the defendant's cell phone number was "active throughout January 2024" and "sent and received numerous communications on and around the date of the Robbery."  DX A at ¶ 16.  In addition, the affidavit showed that evidence of the defendant's identity as the perpetrator would be found not only in records of the Hunt Phone's location during the robbery, but also in records showing the Hunt Phone's location at the other relevant times described in the affidavit. The affidavit described not only the date and time of the robbery, but also three other events at three other times that are relevant to the offense: the Nissan Rogue's entry into Brooklyn from Staten Island at 12:54 p.m., the Nissan Rogue's return to Staten Island at 3:13 p.m., and the issuance of a summons to the defendant in the Nissan Rogue on January 15, 2024.

Based on this showing, the warrant sought CSLI data leading up to, during, and after the armed robbery.  This data requested in the warrant would undoubtedly constitute evidence of a crime.  As the affidavit explained, it would identify the defendant's location "leading up to, during, and in the aftermath of the Robbery," as well as showing the defendant's use and ownership of the Hunt Phone by showing its presence "at locations known to be associated with a suspect."  DX A at ¶¶ 17-22.  This information was especially relevant in this case, where law enforcement was aware not only of the perpetrator's location during the robbery, but also of the location of the Nissan Rogue in the hours before and after the robbery and the location of both the defendant and the Nissan Rogue one week later.  The warrant application

21

thus sufficiently explained why the requested CSLI would contain evidence of the defendant's identity as the perpetrator of the robbery.

This probable cause showing squarely comports with the probable cause advanced by the government in other cases where courts denied suppression of CSLI evidence. For example, in United States v. Javon Samuels, the government sought a search warrant for CSLI of a cell phone number associated with a single suspected perpetrator of a Hobbs Act robbery. No. 24-CR-305 (ALC), 2025 WL 723209, at *1 (S.D.N.Y. Mar. 6, 2025). Like the Cell Site Warrant in this case, the affidavit in Samuels established the defendant's identity as the perpetrator by comparing "surveillance footage from the vicinity of the Shooting" to an image of the defendant wearing a similar item—in that case, an Instagram post showing the defendant wearing the same distinctive pants as the robber. Id., at *1. The affidavit in Samuels showed probable cause that the defendant used the cell phone for which CSLI was sought by stating that the defendant had communicated with employees of an alternative sentencing program by text message on multiple days leading up to and after the shooting. Id. The court in Samuels held that "the magistrate judge reasonably determined that this evidence supports a showing of probable cause" to obtain CSLI. Id. at *7.

As in Samuels, this defendant was identified as the perpetrator in the armed robbery under investigation based on his appearance on the surveillance footage depicting the robbery, compared with an image of the defendant wearing a similar item of clothing. This affidavit also provided additional details not present in Samuels, including the defendant's link to the vehicle used by the perpetrator and the location of that vehicle before and after the robbery. Like the instant Cell Site Warrant, the affidavit in Samuels did "not merely rely on the notion that cellphones are ubiquitous in the modern day"; rather, it established "that Defendant used a

22

cellphone in the days before and after the shooting," including by posting a picture to Instagram. Id. at *7. In fact, the affidavit in this case provides even more probable cause to search CSLI than in Samuels; while the Samuels affidavit stated that the defendant communicated by text message on days leading up to and after the shooting, the affidavit here stated that the Hunt Phone sent and received communications both "on and around the date of the Robbery." DX A at ¶ 16 (emphasis added).

This fact also distinguishes this case from the affidavit that the district court found to be insufficient in Bertini. While the application in Bertini relied only on the agent's "training and experience" as well as "common sense" (2023 WL 8258334, at *8), here the affidavit made it clear that the defendant's cell phone sent and received communications on the date of the robbery and around that date. The affidavit also set forth various times on the date of the robbery at which the defendant's location would constitute relevant evidence of the crime: not only during the robbery itself, but at the times when the Nissan Rogue driven by the perpetrator was captured on license plate readers. In contrast with Bertini, here it was entirely reasonable for the issuing magistrate to determine, from the fact that the Hunt Phone sent and received communications on and around the date of the robbery, that there was a fair probability that he possessed it at some or all of the relevant times described in the affidavit.

United States v. Lauria, 70 F.4th 106 (2d Cir. 2023), is likewise distinguishable from this case. In Lauria, the government sought CSLI for six weeks in 2017, six weeks in 2019, and over four months in 2019. Id. at 128. After correcting for material misstatements in the supporting affidavits, the Second Circuit found that the only two facts connecting the defendant to the charged robberies—that he was Facebook friends with one of the perpetrators and that the defendant's cell phone communicated with the perpetrator's cell phone shortly before one

23

robbery—were "insufficient to demonstrate a 'reasonable probability' that the sought months of [cell site] records" would contain relevant evidence.  Id. at 129.  The Lauria court repeatedly emphasized the absence of facts connecting the defendant to the robbery and the expansive time frame for which the government sought CSLI.  See id. at 129-131.  Here, by contrast, there was ample evidence of the defendant's identity as the perpetrator of the robbery: the comparison of video showing the perpetrator with body worn camera footage showing the defendant in the same vicinity a week later; the distinctive silver Nissan Rogue with mismatched mirrors; and the license plate reader data showing the movement of that Nissan Rogue, consistent with travel from the Hunt Residence to the scene of the robbery and back.  In addition, the Cell Site Warrant did not seek data for nearly as expansive a time frame as the warrant at issue in Lauria.  The Cell Site Warrant requested only twenty days of CSLI, beginning one week before the robbery and ending five days after the defendant was issued a traffic summons in the Nissan Rogue.  Thus, the Cell Site Warrant suffers from neither the "sparse factual information" tying the defendant to the charged crime, nor the mismatch between the facts in the affidavit and the scope of the warrant that concerned the Second Circuit in Lauria.  United States v. Falcon, No. 21-CR-0577 (PKC), 2025 WL 51132, at *9 (E.D.N.Y. Jan. 8, 2025) (denying suppression of CSLI and noting the defendant's reliance on Lauria was "misplaced").

This Court's decision in United States v. Santos, No. 23-CR-436 (OEM), 2024 WL 3566983, at *16 (E.D.N.Y. July 29, 2024), *vacated and remanded*, No. 24-2301, 2025 WL 2461770 (2d Cir. Aug. 27, 2025), also cited by the defendant, is also inapposite to this case. There, the challenged warrant was for cellphone content, not CSLI.  See Santos, 2024 WL 3566983, at *16.  In Santos, this Court found that the fact that a defendant was captured on video using a cell phone approximately two hours before the robbery of a postal worker, coupled with

24

the affiant's training and experience in the investigation of postal crimes, was insufficient to establish probable cause to search the contents of his cell phone. This Court's decision in <u>Santos</u> is inapposite here because warrants that seek to search the content of cell phones raise totally different privacy interests under the Fourth Amendment than CSLI, since CSLI is limited only to a user's physical location. A cell phone's location may be relevant and there may be probable cause to determine its location in instances where there is not yet probable cause to search its contents. Indeed, this Court acknowledged as much in <u>Santos</u> by suggesting that the government could have sought CSLI data prior to seeking a warrant for the phone's contents. <u>Id.</u> at *16. Accordingly, because the Cell Site Warrant "sought only CSLI . . . , not the digital data stored on the phone itself," <u>United States v. Ortega</u>, No. 22-CR-91 (RA)-1, 2022 WL 16647779, at *3 (S.D.N.Y. Nov. 2, 2022), any decision evaluating probable cause to search digital data stored on the phone itself has limited relevance to the Cell Site Warrant. As set forth above, the government clearly demonstrated probable cause as to why information about the defendant's location during the robbery and at the other relevant times set forth in the affidavit would constitute evidence of criminal activity.

In sum, <u>Carpenter</u> held that the government must "generally obtain a warrant supported by probable cause before acquiring" CSLI. 585 U.S. at 316. That is precisely what the government did here. Because probable cause exists "when the totality of the circumstances 'viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime,'" it is clear that the government's application amply supported a search of the defendant's CSLI. <u>United States v. Hewitt</u>, No. 22-1387, 2023 WL 6324380, at *1 (2d Cir. Sept. 29, 2023), cert. denied, No. 23-6400, 2024 WL

25

675119 (U.S. Feb. 20, 2024) (quoting <u>Florida v. Harris</u>, 568 U.S. 237, 248 (2013)).  The

defendant's motion to suppress the CSLI obtained from the Cell Site Warrant should be denied.

     C.     <u>The Premises and Vehicle Warrants Were Based Upon Probable Cause</u>
               <u>Irrespective of the Cell Site Warrant</u>

The defendant next argues that the warrants to search the Hunt Residence and the

Nissan Rogue were defective because they relied on the CSLI obtained from the Cell Site

Warrant.   Def. Mot. at 8-9.  That argument also fails.

First, for all of the reasons discussed above, the Cell Site Warrant was proper, so

it cannot have tainted the Premises and Vehicle Warrants even if it were true that the Premises

and Vehicle Warrants were completely dependent upon information obtained from the Cell Site

Warrant to establish probable cause.  However, the Premises and Vehicle Warrants did not rely

solely on information from the Cell Site Warrant to establish probable cause; probable cause to

search the Hunt Residence and Nissan Rogue was clearly established even without the references

to the returns from the Cell Site Warrant.  Thus, even if the Cell Site Warrant were assumed,

<u>arguendo</u>, to be improper and its fruits tainted, "the mere inclusion of tainted evidence in an

affidavit does not, by itself, taint the warrant," but rather the "court should excise the tainted

evidence" and determine whether a neutral magistrate would find probable cause.  <u>United States</u>

<u>v. Peeples</u>, 962 F.3d 677, 688-89 (2d Cir. 2020).

Here, four paragraphs of the facts section in support of Premises and Vehicle

Warrant-1 relied on information gained from the Cell Site Warrant.  <u>See</u> DX B at ¶¶ 23-25, 28.

As discussed above, Premises and Vehicle Warrant-1 also included numerous facts arising not

from the Cell Site Warrant, but from law enforcement's investigation prior to obtaining the Cell

Site Warrant.  <u>Id.</u> ¶¶ 12-22, 26-27.  The latter includes the video surveillance showing the

perpetrator of the robbery with a similar physical appearance and similar earrings as the body

26

worn camera footage showing the defendant, video showing the Nissan Rogue used by the perpetrator with the same distinctive mismatched mirrors as the vehicle that the defendant was observed in one week later, which was registered at the Hunt Residence, and the license plate reader data showing movements consistent with the Nissan Rogue traveling from the Hunt Residence to the scene of the robbery and back.  A "practical, common-sense" consideration of these facts more than supports a conclusion that there "is a fair probability that contraband or evidence of a crime" would be on the defendant's phone and laptop.  Gates, 462 U.S. at 238.

Thus, excising paragraphs 23-25 and 28 from Premises and Vehicle Warrant-1 would still leave it with sufficient facts creating far more than "a fair probability that. . . evidence of a crime will be found."  Id.  Premises and Vehicle Warrant-2 incorporated and relied on Premises and Vehicle Warrant-1, with the addition only of the information from prospective cell site data indicating that, since the issuance of Premises and Vehicle Warrant-2, the Hunt Phone was still likely to be found at the Hunt Residence.  See GX 1 at 5, ¶¶ 10-12.  Excising these paragraphs does not undo the probable cause established in Premises and Vehicle Warant-1.  Even if there were any doubt about the sufficiency of the probable cause in the Premises and Vehicle Warrants, in light of the Second Circuit's instruction to afford "considerable deference to the probable cause determination of the issuing magistrate," Walcyzak, 496 F.3d at 157, and to resolve doubt in favor of upholding the warrant, Salameh, 152 F.3d at 113, the defendant's argument that the Premises and Vehicle Warrants were invalid should be rejected.

D.    Even if the Defendant's Fourth Amendment Rights Were Infringed, Suppression Would Not be Warranted

Even if the Court were to find that the Cell Site Warrant was not supported by probable cause—which it was—suppression still would be unwarranted because the agents who

27

executed the searches acted in good faith in reliance on both the Cell Site Warrant and the Premises and Vehicle Warrants.  In both cases, the agents' good-faith reliance on the warrants was objectively reasonable.  The warrant affidavits provided detailed probable cause to believe the defendant committed the subject crimes and that the data and places to be searched would contain relevant evidence of those crimes.  They were certainly not "totally devoid of factual" support or "completely bare bones."  Clark, 638 F.3d at 103-04.  The warrants themselves complied with the particularity requirement of the Fourth Amendment and were not overbroad.  There are no blatant deficiencies on the face of the warrants that would defeat the agents' good faith reliance on them.

Furthermore, there is no allegation (and no basis for any allegation) that law enforcement acted in bad faith in relying on the warrants.  Nor does the defendant argue that anyone "acted in 'flagrant disregard' of the warrants' terms."  United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988).  Nor is this the kind of "extraordinary" case where suppression is warranted "after weighing the deterrent benefit of that remedy against the costs of suppressing valuable evidence."  United States v. Messalas, No. 17-CR-339 (RRM), 2020 WL 4003604, at *7 (E.D.N.Y. 2020).

The searching agents' actions in this case were diligent and reasonable and were not sufficiently culpable or susceptible of deterrence to justify application of the exclusionary rule.  Where, as here, there are "detailed factual allegations in support of probable cause . . . [s]uch cases almost invariably demonstrate reasonable reliance."  Clark, 638 F.3d at 103.  Indeed, the defendant has not identified any deficiency in the Cell Site Warrant that is so egregious that no reasonable law enforcement officer could have relied upon the warrant.  Because the factual allegations supporting the Cell Site Warrant were "particularized and far

28

from 'bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations,' . . . the agents acted with objectively reasonable good-faith belief that their conduct was lawful." United States v. Rutledge, No. 23-CR-269 (FB), 2024 WL 1834801, at \*5 (E.D.N.Y. Apr. 26, 2024), citing United States v. Baines, No. 20-CR-00261 (MPS), 2022 WL 35807, at \*2, 4 (D. Conn. Jan. 4, 2022) (holding good-faith exception would apply to agents' reliance on warrant for CSLI).

For all of these reasons, even if the Cell Site Warrant suffered from some defect, the derivative evidence obtained from the Cell Site Warrant and the Premises and Vehicle Warrants should not be suppressed.

## II.   THERE IS NO MATERIAL DISPUTE OF FACT, SO THE DEFENDANT'S MOTION SHOULD BE DENIED WITHOUT AN EVIDENTIARY HEARING

The defendant's motion to suppress evidence should be denied without a hearing. A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence. See United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005).  Rather, a court must grant such a hearing only if a movant's affidavit contains specific factual allegations which, if proven, would warrant the relief requested.  See id.; United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on a motion to suppress not required unless the defendant's submissions raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion).  In other words, there must be a material factual dispute supported by personal knowledge for a hearing to be justified.  See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967); United States v. Hassan, No. 18-CR-603 (ARR), 2019 WL 5684367, at \*4 (E.D.N.Y. 2019) (denying motion to suppress without hearing because defendant's affidavit, "even if assumed to be true, would not require suppression") (quoting United States v. Getto, 729 F.3d 221, 226 n.6 (2d Cir. 2013)); United States v. Ashburn, 76 F. Supp. 3d 401, 436 (E.D.N.Y. 2014) (collecting cases for

29

the proposition that "a defendant must show that disputed issues of material fact exist before an evidentiary hearing is required").

Here, the defendant raises no factual dispute that requires a hearing.  Indeed, the defendant's factual background relies on the text of the government's search warrant applications and facts contained in the defendant's own declaration, which the government does not dispute. Accordingly, there is no dispute of material fact to be resolved by an evidentiary hearing, and the defendant's motion should be denied without one.

CONCLUSION

For the reasons described above, the defendant's motion should be denied in its entirety.

Dated: Brooklyn, New York
   December 12, 2025

         Respectfully submitted,

         JOSEPH NOCELLA, JR.
         UNITED STATES ATTORNEY
         Eastern District of New York
         271 Cadman Plaza East
         Brooklyn, New York 11201

     By: /s/ Russell Noble
       Russell Noble
       Assistant United States Attorney
       (718) 254-6178

30