UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,

**MEMORANDUM AND ORDER**

        -against-                            24-CR-00142 (OEM)

PIERRE HUNT,

               Defendant.
-------------------------------------------------------------------x
ORELIA E. MERCHANT, United States District Judge:

Defendant Pierre Hunt ("Defendant" or "Hunt") is charged in a two-count indictment for an armed robbery of a dry cleaners in early 2024. Hunt now moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) to suppress: (1) cell site location information ("CSLI") obtained under a search warrant for a phone number allegedly registered to Hunt, and (2) physical and electronic evidence obtained pursuant to a second warrant for Hunt's residence, a family member's car, and Hunt's electronic devices.[1] For the following reasons Hunt's Motion is denied.

## BACKGROUND

### A. The Cell Site Warrant

Hunt is charged with Hobbs Act Robbery and possessing, brandishing and discharging a firearm during a crime of violence in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c). *See* Indictment, Dkt. 11. The Government alleges that on January 8, 2024, at approximately 2:15 p.m., Hunt drove to a dry cleaners, demanded money, stole $200 in cash from the cashier, discharged a

---

[1] Hunt filed his motion to suppress on November 12, 2025. *See* Memorandum in Support of Motion to Suppress, Dkt. 38 ("Motion" or "Mot."); *see also* Declaration of Michael D. Weil ("Weil Decl."), Exhibit A PH000901-17, Dkt. 39-1 ("Cell Site Warrant Application"). The Government filed its opposition on December 12, 2025. *See* Government's Memorandum of Law in Opposition to the Defendant's Motion to Suppress Evidence, Dkt. 41 ("Opposition" or "Opp'n"), and Hunt filed a reply on December 16, 2025. *See* Reply Memorandum in Support of Motion to Suppress, Dkt. 42 ("Reply"). The Court held oral argument on Hunt's Motion on January 20, 2026.

firearm, and left. *See* Complaint and Affidavit in Support of an Application for an Arrest Warrant, Dkt. 1 ("Complaint" or "Compl.") at 1.

The robbery was captured on video surveillance, including stills of the robber and the clothing they were wearing. Cell Site Warrant Application ¶ 8. Before the robbery occurred, video surveillance showed a silver Nissan Rogue with a black side mirror on the driver's side and a silver side mirror on the passenger's side ("Vehicle") one block north of the dry cleaners. *Id.* ¶ 9. Video surveillance described in the Cell Site Warrant Application shows an individual wearing clothing consistent with that worn by the robber exit the Vehicle and walk in the direction of the store before the robbery, return shortly after the robbery, enter the car, and drive westbound. *Id.* Video surveillance captured the Vehicle's license plate as it departed. *Id.* ¶ 10.

A law enforcement license plate reader observed the Vehicle traveling between Staten Island and Brooklyn. *Id.* ¶ 13. Specifically, the license plate reader captured the Vehicle on the Verrazano Bridge travelling from Staten Island to Brooklyn at approximately 12:54 p.m. on January 8, 2024. *Id.* At approximately 3:13 p.m. on the same date, a license plate reader captured the Vehicle returning from Brooklyn to Staten Island via the Verrazano Bridge. *Id.*

On January 15, 2024, Hunt was encountered by police officers in the driver's seat of a Nissan Rogue with a black side mirror on the driver's side and a silver side mirror on the passenger's side. *Id.* ¶ 11. A still image from the officer's body camera depicts Hunt in this car. *Id.* He was observed to be wearing "large diamond earrings consistent with those worn by the Robber" and had a "size, build, and skin tone . . . consistent with the [r]obber." *Id.* ¶ 16. At the encounter, a summons was issued to Hunt for consuming cannabis in a motor vehicle on a public highway. *Id.* ¶ 12. He provided his driver's license, which listed his home address as 84 Gary Court, Apt. 2F, Staten Island, New York. *Id.* A law enforcement database reflects that the Vehicle

is registered to a female who lives at the same address. *Id.* It is undisputed that Hunt was living at 84 Gary Court, 2nd Floor, Staten Island, New York, on the day a search warrant was executed there. Affidavit in Support ¶ 3, Dkt. 40 ("Hunt Aff.").

A law enforcement database indicates that Hunt provided a phone number, (929) 331-4073 (the "Phone"), to a pawn shop in October 2023, along with a driver's license, which was the same license that he showed to officers during the January 15, 2024, encounter. Cell Site Warrant Application ¶ 15. Additionally, records maintained by AT&T indicate that the Phone was "active throughout January 2024, and . . . sent and received numerous communications on and around the date of the [r]obbery." *Id.* ¶ 16. It is not disputed that the Phone was registered to Hunt from at least January 1, 2024, to the date of his arrest. Hunt Aff. ¶ 2.

The Cell Site Warrant Application sought CSLI records for the Phone from January 1, 2024, through January 20, 2024, on the basis that "the presence of the Subject Phone at locations known to be associated with a suspect will be probative evidence of the identity of the user of the Subject Phone." Cell Site Warrant Application ¶ 22.

On February 2, 2024, Magistrate Judge Levy issued a search warrant for CSLI for the Phone. *See* Weil Decl., Exhibit A at PH000918-24, Dkt. 39-1 ("Cell Site Warrant"). The Cell Site Warrant required AT&T to produce "records and information associated with the cellular telephone assigned call number (929) 331-4073[.]" *Id.* at PH000922. It also required AT&T produce "information regarding the cell tower and antenna face (also known as 'sectors') through which [any] communications were sent and received for both call detail records and any data sessions as well as per-call measurement data" from January 1, 2024, to January 20, 2024. *Id.* at PH000924. It further authorized the Government to seize "[a]ll information described . . . that constitutes evidence, fruits, contraband, and instrumentalities of [Hobbs Act Robbery, Unlawful

3

Use of a Firearm During a Crime of Violence, and Possession of a Firearm by a Convicted Felon] involving PIERRE HUNT, the user of the Subject Phone." *Id.*

According to the Government, the Cell Site Warrant returned information showing that on January 8, 2024, at approximately 12:20 p.m., the Phone was in the vicinity of Hunt's address, the Phone crossed the Verrazano Bridge into Brooklyn at approximately 12:54 p.m., was located in the vicinity of the dry cleaners at approximately 2:17 p.m., and then at 3:14 p.m. it crossed over the Verrazano Bridge.  Opp'n at 7-8.

**B.  Premises and Vehicle Warrants**

On March 4, 2024, Magistrate Judge Pollak issued a search warrant authorizing searches of the premises at 84 Gary Court, Apt. 2F, Staten Island, New York, a silver 2017 Nissan Rogue bearing the same license plate as the Vehicle, and any closed and locked containers and electronic devices found in either location.  *See* Weil Decl., Exhibit B at PH000967-87, Dkt. 39-2 ("First Premises and Vehicle Warrant").  The First Premises and Vehicle Warrant authorized the seizure of clothing worn by the perpetrator of the robbery; evidence of the identity of the residents at the premises; categories of electronic devices that may be attributed to Hunt; records on electronic devices that relate to violations of the subject offenses; and prospective cell site location data associated with the Phone.  *See id.* PH00979-82.

The application for the First Premises and Vehicle Warrant, *see* Weil Decl., Exhibit B at PH000926-66, Dkt. 39-2 ("First Premises and Vehicle Warrant Application"), restated the same facts set forth in the Cell Site Warrant Application as to why Hunt may have been the perpetrator of the robbery in addition to a screenshot from a second surveillance camera at the dry cleaners and a description of the information obtained from the Cell Site Warrant, *id.* ¶¶ 12-19, 24-25.  The First Premises and Vehicle Warrant Application also explained why evidence was likely to be

found at the premises and in the Vehicle based on the affiant officer's training and experience, *id.* ¶¶ 26-28, the fact that the Cell Site Warrant returns showed that the Phone was in the area of the dry cleaners and premises before and after the robbery such that there was probable cause to seize and search any electronic devices, *id.* ¶ 28, and the fact that that prospective cell site location data for the Phone would assist law enforcement in locating and identifying the Phone, its user, and evidence of the subject offenses, *id.* ¶¶ 30-34.

Because law enforcement officers were unable to execute the First Premises and Vehicle Warrant due to logistical constraints, Opp'n at 11, on March 18, 2024, the Government submitted an additional application to Magistrate Judge Kuo, who authorized new warrants to search the premises and Vehicle "that were substantively identical to the corresponding warrants in [the First Premises and Vehicle Warrant,]" *id.*; *see* Opp'n, Exhibit 1 at PH001069-82, Dkt. 41-1 ("Second Premises and Vehicle Warrant").  Additionally, the application for the Second Premises and Vehicle Warrant, *see id.*, Exhibit 1 at PH000988-1003, Dkt. 41-1 ("Second Premises and Vehicle Warrant Application"), included information obtained pursuant to the warrant for prospective CSLI returned from the First Premises and Vehicle Warrant showing that, since at least March 8, 2024, the Phone was "regularly located" within the vicinity of the premises.  *Id.* at PH000992.  The Second Premises and Vehicle Warrant returned several items of clothing matching the clothes of the robber, large diamond earrings, and two cell phones.  Opp'n at 13-14.

## LEGAL STANDARD

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no warrants shall issue, but upon probable cause, supported by Oath."  U.S. CONST. amend. IV; *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008).  The issuance of a search warrant signed by a neutral magistrate depends on a finding of probable cause and creates a presumption that it

was objectively reasonable for the officers to believe there was probable cause for the ensuing search. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see United States v. Nelson*, 828 F. App'x 804, 806 (2d Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "The court need only ensure that the magistrate judge had a 'substantial basis' for concluding that probable cause existed." *United States v. Chang*, 18-CR-00681 (NGG), 2024 WL 1308775, at *11 (E.D.N.Y. Mar. 27, 2024) (quoting *Gates*, 462 U.S. at 236).

The Supreme Court has recognized a person to have an "expectation of privacy in the record of his physical movements as captured through CSLI." *Carpenter v. United States*, 585 U.S. 296, 310 (2018). "[P]robable cause to search a location for—or, in the case of CSLI, to demand—particular items or records is demonstrated where a totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found' thereby." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238). "[A] showing of probable cause must be premised on 'particularized' facts rather than irrelevant generalizations." *United States v. Bertini*, 23-CR-61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)) (collecting cases). To satisfy probable cause, "[t]he issuing judicial officer must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238). Furthermore, a search warrant must "establish[] a sufficient nexus between the criminal activities alleged" and the place or object to be searched. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). "A showing of nexus does not require direct evidence and 'may be based on "reasonable inference" from the facts presented

based on common sense and experience.'" *Id.* (quoting *United States v. Buck*, 84-CR-220 (CSH), 1986 WL 12533, at *4 (S.D.N.Y. Oct. 24, 1986), *rev'd on other grounds*, 813 F.2d 588 (2d Cir. 1987)).

## DISCUSSION

### A. Cell Site Warrant

Hunt argues that the Cell Site Warrant is based on the false assumption that people carry cell phones most of the time, which is an insufficient nexus tying Hunt to the Phone and the Phone to the alleged offense. *See* Mot. at 5-8. Hunt relies on *Bertini*, 2023 WL 8258334, where the court considered whether a CSLI warrant was based upon probable cause to believe either that the defendant was carrying his cell phone at the time he committed one of the bank burglaries at issue or that he somehow used his cellphone at an earlier time in connection with or to facilitate the bank burglaries. *See* Mot. at 5-6. Specifically, Hunt asserts that there was no probable cause for the Cell Site Warrant because (1) there is no allegation that he used his phone in connection with the incident or to communicate with anyone else and (2) video surveillance and eyewitness testimony does not depict the perpetrator using his phone. Mot. at 4-5. Hunt also argued at oral argument that there was insufficient probable cause as to the identity of the perpetrator and the Cell Site Warrant solely relied on attenuated circumstantial evidence connecting Hunt to the robber's identity.

The Government argues that, rather than relying on the assumption that people carry cell phones most of the time, the Cell Site Warrant Application articulated a fair probability that evidence of a crime would be found in the CSLI for the Phone because it specified that Defendant was the perpetrator, the Phone belonged to him, and the Phone was active "on and around the date of the robbery." Opp'n at 19; Cell Site Warrant Application ¶ 16.

The Supreme Court requires a "fair probability that contraband or evidence of a crime will be found" in the place to be searched. *Gates*, 462 U.S. at 238. Contrary to Hunt's argument that there is no evidence of the Phone being used in connection with the crime, *see* Mot. at 7, the Second Circuit has expressly advised that "a search warrant does not require probable cause of the *use* of the property in furtherance of criminal conduct, so long as there is probable cause that the location to be searched contains relevant evidence of the criminal conduct." *United States v. Silva*, 146 F.4th 183, 190 (2d Cir. 2025) (emphasis in original). Thus, the Government need only show probable cause that the CSLI contained relevant evidence of the alleged crime. *See id.*

Furthermore, evidence linking the identity of the perpetrator and the crime may function as particularized evidence in support of probable cause. For instance, in *United States v. Samuels*, the warrant for CSLI was predicated on an affidavit showing the similarities in identity between the surveillance footage from the vicinity of the crime and an Instagram image of the defendant, wearing the same distinctive pants as the robber in the footage. 24-CR-00305 (ALC), 2025 WL 723209, at *1 (S.D.N.Y. Mar. 6, 2025).

Here, a consideration of the totality of circumstances indicates a fair probability that contraband or evidence of a crime would be found in the CSLI. As to the Phone, the Cell Site Warrant Application detailed a connection between the Phone for which CSLI was sought and Hunt. It explained that the Phone's number was the same number Hunt provided as his own in October 2023. Cell Site Warrant Application ¶ 15. It also attested that, because records indicate the Phone was active throughout January 2024, and sent and received numerous communications on and around the date of the robbery, there was reason to believe that it would provide evidence related to the crime. *Id.* ¶¶ 16-17.

As to identity, the Cell Site Warrant Application also pointed out the similarities in appearance between the robber and Hunt and linked the robber and Hunt based on the Vehicle. The Cell Site Warrant Application identified the robber as "a black male wearing sunglasses, what appear to be large diamond earrings, a dark-colored jacket, and a grey and black knit hat[.]" *Id.* ¶ 7. The surveillance footage captured an individual "wearing dark clothing consistent with the [r]obber exit[ing] the driver's seat of the vehicle" and walking towards the dry cleaners, and after the robbery "an individual wearing dark clothing consistent with the [r]obber . . . enter[ing] the driver's seat of the Nissan Rogue[.]" *Id.* ¶ 9. Video surveillance captured the Vehicle's license plate number. *Id.* ¶ 10. One week later, Hunt was encountered in a vehicle with the same license plate and side mirrors as the Vehicle, *id.* ¶ 11, and at that time, Hunt provided his driver's license listing his home address as the same address where the owner of the Vehicle resides, *id.* ¶ 12. Based on the footage from that encounter, the Cell Site Warrant Application notes that he was wearing diamond earrings consistent with the robber's and has a size, build, and skin tone consistent with the robber. *Id.* ¶ 11. The Cell Site Warrant Application explained that the Vehicle was captured by a license plate reader as traveling over the Verrazano Bridge to and from Staten Island, where Hunt lives, before and after the crime took place. *Id.* ¶ 13. By gathering the Phone's CSLI, there was a fair probability that the Government could confirm Hunt's whereabouts at the time of the crime and, given the connections between Hunt, the Vehicle, and the Phone, there was probable cause to believe it would constitute evidence of the subject offense. *See id.* ¶ 17.

The Court finds the circumstantial evidence linking Hunt to the identity of the robber compelling and directly relevant to establishing the probable cause for the Cell Site Warrant. The Cell Site Warrant Application linked the Vehicle to Hunt, the Phone to Hunt, and, based on still images of Hunt's appearance and the timing of the Vehicle's transit to and from Staten Island,

Hunt to the crime. Thus, by obtaining the Phone's location data, there was a fair probability that the Government would receive evidence of Hunt's location during the time of the crime. In turn, there was a fair probability that the Government would receive evidence of the crime. Indeed, the magistrate judge reviewing the Cell Site Warrant Application could review the images and facts showing the similarities between Hunt and the perpetrator, and make the connection between Hunt, the Vehicle, and the Phone to conclude that there was probable cause to obtain the Phone's CSLI.

To the extent that Hunt likens this case to *United States v. Santos*, where the Court held that there was no probable cause for a search warrant for the contents of the defendant's phone, this case is distinguishable. *See* 24-2301, 2025 WL 2461770, at *2 (2d Cir. Aug. 27, 2025) (citing *United States v. Santos*, 23-CR-436 (OEM), 2024 WL 3566983, at *7-16 (E.D.N.Y. July 29, 2024)). *Santos* involved a warrant to search the defendant's phone, not a warrant to obtain CSLI. *See Santos*, 2024 WL 3566983 at *2. To the extent that Hunt argues that obtaining the location data is just as intrusive as the contents of a person's phone, the standards for a CSLI search and phone content search are the same: whether "there is probable cause that the location to be searched contains relevant evidence of the criminal conduct." *See Silva*, 146 F.4th at 190. Here, the Cell Site Warrant was obtained and used to seek a search warrant for the Defendant's electronic devices, making the location data the "relevant evidence of [] criminal conduct." *Id.* The Cell Site Warrant Application, seeking location information "from January 1, 2024, through January 20, 2024," Cell Site Warrant Application ¶ 22, allowed the Government to compare the patterns of movement evidenced by the CSLI to Hunt's residence, in relation to the crime, and at the time of Hunt's encounter with law enforcement one week later. The facts set forth in the Cell Site Warrant Application demonstrated why data showing Hunt's location on the days on and around the date of the crime was related to the crime and support a finding of probable cause.

### B. Premises and Vehicle Warrants

Hunt argues that the Second Premises and Vehicle Warrant was tainted fruit from the poisonous tree because it was based on the CSLI returned from the Cell Site Warrant, which lacked probable cause.  Mot. at 8-9.  Hunt additionally argues that the sole basis for seizing and searching the electronic devices was to obtain and confirm the location information already obtained under the Cell Site Warrant.  *Id.*

Although evidence derived from an unconstitutional search is "fruit of the poisonous tree" and deemed inadmissible, *see Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963), the Court has concluded that the Cell Site Warrant was constitutional.  Therefore, the Court denies Hunt's Motion to suppress the evidence returned pursuant to the Second Premises and Vehicle Warrant because there is no basis to argue that the evidence was tainted fruit.

### C. Good Faith

Because the Court determines that the Cell Site Warrant was based on probable cause, it need not reach the merits of the Government's good faith argument.

**CONCLUSION**

For the reasons explained above, Hunt's Motion is denied.

SO ORDERED.

\_\_\_\_*/s/*_____
ORELIA E. MERCHANT
United States District Judge

February 12, 2026
Brooklyn, New York